Case 7:21-cv-00061   Document 20   Filed on 08/09/21 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
August 09, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| THE WEITZ COMPANY, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. 7:21-cv-00061 |
| STRONG STRUCTURAL STEEL, LTD; § | |
| BRADEN & TREYTON MANAGEMENT, § | |
| LLC; LAMAR STRONG, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

The Court now considers Plaintiff's motion for entry of default judgment.[1] After considering the motion, record, and relevant authorities, the Court **GRANTS** Plaintiff's motion.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is an action for breach of contract.[2] Plaintiff The Weitz Company, LLC filed its complaint against Defendants Strong Structural Steel, Ltd. (Structural Steel); Braden & Treyton Management, LLC (Braden & Treyton Management); and Lamar Strong (Strong) on February 18, 2021 for an alleged breach of a forbearance agreement (Agreement) and promissory note (Note) between the parties.[3] Defendants were served on February 19, 2021.[4] To date, no Defendant has answered or otherwise appeared in this case. On March 25, 2021, Plaintiff filed a request for entry of default,[5] which the Court held in abeyance until Plaintiff pleaded the proper basis for citizenship

---

[1] Dkt. No. 19.
[2] Dkt. No. 1.
[3] Dkt. No. 1 at 2–3.
[4] Dkt. Nos. 5–7.
[5] Dkt. No. 11.

for all parties to establish subject matter jurisdiction in this case.[6] On May 12, 2021, once citizenship and jurisdiction were properly established, the Court granted Plaintiff's request for entry of default and the Clerk of the Court entered default against Defendants.[7] Defendants have not responded. On July 22, 2021, Plaintiff filed the instant motion for default judgment.[8] The Court now turns to its analysis.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332.

## III. DISCUSSION

### a. Legal Standard

Obtaining a default judgment is a three-step process: "(1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment."[9] Once entry of default is made, "plaintiff may apply for a judgment based on such default. This is a *default judgment*."[10] Here, in the absence of any responsive pleadings pursuant to Federal Rule of Civil Procedure (Rule) 55(a), the Court found default[11] and the clerk entered default."[12] The only remaining question is whether the third step—actual entry of default judgment—is appropriate.

Federal Rule of Civil Procedure 55(b) authorizes entry of default judgment with court approval. Default judgments are a disfavored and drastic remedy, resorted to only in extreme situations such as an unresponsive party.[13] The Court will not grant default judgment automatically

---

[6] Dkt. No. 13.
[7] Dkt. Nos. 15 & 16.
[8] Dkt. No. 19.
[9] *Bieler v. HP Debt Exch., LLC*, No. 3:13-CV-01609, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)).
[10] *N.Y. Life Ins. Co.*, 84 F.3d at 141.
[11] Dkt. No. 11.
[12] Dkt. No. 12.
[13] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

or as a matter of right, even if a defendant is in default.[14] Whether to grant default judgment is left to the sound discretion of the Court.[15] Determining the propriety of default judgment is itself a three-step process.

First, the Court must determine whether Plaintiff's claims are well-pled and substantively meritorious.[16] After all, a defendant's failure to answer or otherwise defend does not mean the particular legal claims levied are valid and merit judgment against the defendant.[17] When analyzing the merits of claims, the Court may assume the truth of all well-pled allegations in the plaintiff's complaint because defendants, by defaulting, admit well-pled allegations of fact.[18] But the Court will not hold defendants to admit facts that are not well-pled or to admit conclusions of law.[19]

Second, if Plaintiff states a well-pled claim for relief, the Court examines six factors to determine whether to grant default judgment:

> [(1)] whether material issues of fact are at issue, [(2)] whether there has been substantial prejudice, [(3)] whether the grounds for default are clearly established, [(4)] whether the default was caused by a good faith mistake or excusable neglect, [(5)] the harshness of a default judgment, and [(6)] whether the court would think itself obliged to set aside the default on the defendant's motion.[20]

Third, if the plaintiff's claims are meritorious and default judgment appears appropriate, the Court must determine whether the requested relief is proper. Specifically, default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[21]

---

[14] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).
[15] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).
[16] *See Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015).
[17] *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[18] *Id.*
[19] *Id.*
[20] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).
[21] FED. R. CIV. P. 54(c); *see also Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 813 (5th Cir. 2018) (holding that rendering relief in a default judgment differs from other kinds of judgment).

If the Court determines default judgment is appropriate, it must determine how to calculate damages. The general rule is "unliquidated damages normally are not awarded without an evidentiary hearing."[22] However, there is an exception when the amount claimed is "one capable of mathematical calculation."[23] When this exception applies, there is no need for an evidentiary hearing, and the court can enter default judgment on the briefing. The Court now turns to its analysis.

**b. Analysis**

*1. Choice of Law*

To begin its analysis, the Court must first determine what law applies to Plaintiff's breach of contract claims in this case. The parties' choice of law clause in the Agreement provides that: "this Agreement shall be construed in accordance with and governed by the laws of the State of Colorado but as determined without regard to its choice of law principles."[24] This Court "must apply the choice of law rules of the forum state, in this case Texas."[25] "Texas choice of law principles give effect to choice of law clauses if the law chosen by the parties has a reasonable relationship with the parties and the chosen state, and the law of the chosen state is not contrary to a fundamental policy of the [forum] state."[26] Because the Agreement was entered into to resolve a dispute that occurred between the parties in Colorado,[27] the Court finds that Colorado law has a reasonable relationship to the parties. Furthermore, the Court does not find Colorado law regarding

---

[22] *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998).
[23] *Id.* (citing *James v. Frame*, 6 F.3d 307, 309–10 (5th Cir. 1993)).
[24] Dkt. No. 1-1 at 1, ¶ 4.
[25] *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005); *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 790 (S.D. Tex. 2005) (Harmon, J.) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) ("In federal question jurisdiction cases, where a court is exercising supplemental jurisdiction over state-law claims, a federal court also applies the choice of law rules of the forum state to the state law claims.")
[26] *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990); *see* TEX. BUS. & COM. CODE ANN. § 1.301(a) (West 2020) ("[W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.").
[27] Dkt. No. 1 at 2, ¶¶ 9–10.

breach of contract contrary to the fundamental policy of Texas. Accordingly, the Court will apply Colorado law in its analysis of Plaintiff's breach of contract claims in this case.

2. *Whether Plaintiff's Claim is Substantively Meritorious*

In Plaintiff's original complaint, it alleges that Defendants breached a forbearance agreement and promissory note that the parties entered into on July 30, 2019 as part of the resolution of a previous dispute.[28] To prevail on a breach of contract claim, a plaintiff must demonstrate (1) the existence of a valid contract; (2) performance by the plaintiff; (3) failure to perform the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.[29]

Here, the complaint alleges, and the Agreement confirms, that Defendant Lamar Strong, on behalf of himself and Defendant Strong Structural Steel, signed the Agreement and Note, acknowledging a debt of $346,000 plus accrued interest ("Balance Due"); their obligation to pay the Balance Due; and waiving all defenses.[30] Pursuant to the Agreement and Note, Defendants Strong and Structural Steel further agreed to make payments on the Balance Due and pay interest on the Balance Due commencing September 10, 2019 at a rate of 6% per annum, compounded monthly, and to pay the debt in full on or before November 30, 2020.[31] In the Note accompanying the Agreement, Defendants Strong and Structural Steel also agreed to a default interest rate of 1.5% per month, compounded monthly, or 18% per annum, plus attorney fees, court costs, and costs of collection.[32] Plaintiff alleges that Defendants Strong and Structural Steel failed to pay the balance of the debt under the Agreement and Note on or before the November 30, 2020 deadline.[33]

---

[28] Dkt. No. 1 at 2–3, ¶¶ 11–12.
[29] *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).
[30] *Id.*; Dkt. No. 1-1.
[31] Dkt. No. 1 at 12; Dkt. No. 1-1 at 1, ¶ 2.
[32] Dkt. No. 1 at 3, ¶ 15; Dkt. No. 1-1 at 3, ¶ 3 & 5.
[33] Dkt. No. 1 at 3, ¶ 14.

Plaintiff alleges that by failing to pay the debt by the date due, Defendants Strong and Structural Steel breached the Agreement.[34] On this basis, Plaintiff alleges that "[a]s of December 1, 2020, the amount due and owing on Agreement debt was $346,000.00 of principal, $1,730.00 of interest, plus accruing interest at the default rate of 18% per annum ($170.63 per diem), [for] which [Strong and Structural Steel] are jointly and severally liable."[35] Because Defendants failed to answer, the Court accepts these well-pled claims as true.[36] Based on these claims and the attached Agreement and Note, the Court finds that Plaintiff has satisfied all elements of a breach of contract claim.[37] Accordingly, the Court also finds Plaintiff's claims against Defendants Strong and Structural Steel substantively meritorious.

Plaintiff further alleges that Defendant Braden & Treyton Management is vicariously liable as a general partner of Defendant Structural Steel, a Texas limited partnership.[38] "[I]n Texas as elsewhere, the general partner in a limited partnership is liable for the debts and obligations of the partnership."[39] Thus, as a general partner of Defendant Structural Steel, Defendant Braden & Treyton Management is vicariously liable for Defendant Structural Steel's debts and obligations under and resulting from its breach of the Agreement with Plaintiff. On these basis, the Court also finds Plaintiff's claim against Defendant Braden & Treyton Management substantively meritorious.

---

[34] Dkt. No. 1 at 4.
[35] Dkt. No. 1 at 4, ¶ 24.
[36] See *Nishimatsu, supra* note 18.
[37] See *W. Distrib. Co., supra* note 29.
[38] Dkt. No. 1 at 5, ¶ 29.
[39] *Al-Saud v. Youtoo Media, L.P.*, 754 F. App'x 246, 251 (5th Cir. 2018) (citing TEX. BUS. ORGS. CODE § 153.152(b); *Doctors Hosp. at Renaissance, Ltd. v. Andrade*, 493 S.W.3d 545, 551 (Tex. 2016).

### 3. Whether Default Judgment is Proper

The Court examines the six factors to determine the propriety of default judgment.[40] Upon review of the record, the finds that the record does not reveal any material issues of fact. Further, as Defendants failed to answer or appear and Plaintiff's claims are substantively meritorious, the grounds for default are clearly established. Defendants Strong, Structural Steel, and Braden & Treyton Management, by their failure to appear, cannot contest the Plaintiff's well-pled allegations.[41] There is no substantial prejudice to any claimant, because Plaintiff has properly served Defendants pursuant to Federal Rule of Civil Procedure 4.[42] Additionally, there is no indication in the record that Defendants' default has been caused by a good faith mistake or excusable neglect, so default judgment is not unduly or prejudicially harsh. This is further supported by Defendants' agreement to confession of judgment in the Note attached to the Agreement.[43] In light of the foregoing, the Court finds that it would not feel obliged to set aside a default judgment on a Defendants' untimely motion. For these reasons, default judgment as to Plaintiff's claim is proper.

### 4. Appropriate Relief

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[44] Furthermore, because the damages requested by Plaintiff are easily mathematically calculated, the Court declines to hold an evidentiary hearing.[45] In Plaintiff's motion, it requests:

---

[40] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).
[41] *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[42] *See* Dkt. Nos. 5–7.
[43] Dkt. No. 1-1 at 3.
[44] FED. R. CIV. P. 54(c).
[45] *See Leedo, supra* note 23.

1) $346,000.00 as the principal amount due and owing under the Agreement; 2) Pre-judgment interest on the principal accrued at the contractually agreed rate of 6.00% per annum through December 1, 2020 in the amount of $1,730.00, plus accruing interest at the default rate of 18% per annum ($170.63 per diem) from and after December 1, 2020 until the date of judgment; 3) Post-judgment interest accruing at the applicable statutory post-judgment interest rate from the date of judgment until paid; 4) Reasonable and necessary attorney's fees and expenses in the amount of $9,066.45 incurred through the date of the default judgment; 5) Post-judgment reasonable and necessary attorney's fees incurred from time to time, including contingent awards for post-judgment proceedings and any appeals; 6) All costs of court; and 7) Such other and further relief, at law or in equity to which Weitz may show itself justly entitled.[46]

In the pleadings, Plaintiff claims all amounts due, owing and unpaid under the Agreement; pre-judgment interest and post-judgment interest as provided in the Agreement at the default rate until paid; reasonable and necessary attorney's, including contingent awards for post-judgment proceedings and any appeals; all costs of court; and such other and further relief, at law or in equity to which Plaintiff may show itself justly entitled.[47] Thus, the relief requested in Plaintiff's motion for default judgment does not differ nor exceed the amount demanded in the pleadings. The Court therefore finds the requested relief appropriate. The Court now turns to calculate total damages and reasonable attorney fees, expenses, and costs. As they are easily mathematically calculable, the Court declines to hold a hearing and calculates total damages and determines reasonable attorney fees, expenses, and costs based on the briefings.

*i. Damages*

In its complaint, Plaintiff alleges that the entire debt under the contract of $346,000.00 of principal remains due, plus $1,730 of interest, and accruing interest at the default rate 18% per annum ($170.63 per diem), for which Defendants are jointly and severally liable.[48] The Agreement and attached Note lay out these amounts, as well as provide that upon default, Plaintiff is also

---

[46] Dkt. No. 19 at 8.
[47] Dkt. No. 1 at 6.
[48] Dkt. No. 1 at 4, ¶¶ 24; 29.

entitled to the "costs of suit and other expenses in connection therewith, together with an attorney's reasonable costs of collection."[49] As the relief requested by Plaintiff does not differ or exceed the relief demanded in the pleadings and is reflected by the terms of the Agreement and Note, Court finds the requested damages appropriate. For the foregoing reasons, the Court **AWARDS** Plaintiff **$346,000** in principal due, **$1,730** of accrued interest, and accrued default interest accruing interest at the default rate of 18% per annum ($170.63 per diem) from and after December 1, 2020 until the date of judgment, currently calculated at **$42,828.13**.[50]

Plaintiff also requests post-judgment interest.[51] "A court with diversity jurisdiction awards post–judgment interest according to the federal rate."[52] Under 28 U.S.C. § 1961, such interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." Accordingly, the Court **AWARDS** post-judgment interest in accordance with 28 U.S.C. § 1961.

The Court now turns to consider Plaintiff's request for attorneys' fees and related expenses.[53]

### ii. Attorney Fees and Related Expenses

Pursuant to Rule 54(d), a claim for attorney fees and related expenses must be made by motion. The motion must (1) be made no later than 14 days after the entry of judgment; (2) specify

---

[49] Dkt. No. 1-1 at 3, ¶¶ 3 & 5.
[50] Calculated by multiplying the $170.63 per diem interest by the 251 days that have passed since the default interest began to accrue on December 1, 2020. *See* Dkt. No. 1 at 4, ¶¶ 24; 29; Dkt. No. 19 at 8; Dkt. No. 19-2 at 3.
[51] Dkt. No. 19 at 7–8, ¶¶ 3.11, 3.
[52] *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993); *Harris v. Mickel*, 15 F.3d 428, 431 n.4 (5th Cir. 1994) (finding that federal law applies in a diversity action to determine postjudgment interest because the federal statutory rate is procedural in nature).
[53] Dkt. No. 19 at 7–8.

the judgment and the statute, rule, or other grounds entitling the movant to the award; and (3) state the amount sought or provide a fair estimate of it.[54] Plaintiff's motion requests attorney fees and costs in the amount of $9,066.45.[55] As the motion is filed prior to judgment, it is timely under Rule 54(d). In support of its claim for attorney fees and costs, Plaintiff cites the Agreement entitling it to recover attorney fees and related expenses in the instance of default by Defendants.[56] Accordingly, the Court finds that Plaintiff's motion satisfies the requirements of Rule 54(d). The Court now turns to determine whether the requested attorney fees are reasonable.

The determination of whether a fee request is reasonable is based on a two-step process called the "lodestar method."[57] "First the court calculates the 'lodestar' by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers."[58] Attorney fees must be calculated at the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation.[59] When determining whether an hourly rate is reasonable, the relevant legal community is the one in which the district court sits.[60] The fee applicant bears the burden of producing evidence that the requested rate is appropriate within the relevant legal community.[61]

---

[54] FED. R. CIV. P. 54(d). The rule also provides that the motion must "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." The Court has not ordered Plaintiff to do so.
[55] Dkt. No. 19 at 7–8, ¶¶ 3.9–3.11; line 4.
[56] Dkt. No. 19 at 7, ¶ 3.9 (citing Dkt. No. 19-2 at 3, ¶¶ 3 & 5).
[57] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998); *Davis v. Credit Bureau of the S.*, 908 F.3d 972, 978 (5th Cir. 2018); *Martinez v. Ranch Masonry, Inc.*, 760 F. App'x 288, 290 (5th Cir. 2019).
[58] *Id.* (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)); *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir. 1999); *United States ex rel. Bliss v. Biocompatibles Int'l PLC*, Civil Action No. SA-13-CV-667-XR, 2019 U.S. Dist. LEXIS 181, at *10 (W.D. Tex. Jan. 1, 2019); *Matter of Wolf*, 739 F. App'x 290, 291 (5th Cir. 2018) (describing the lodestar method).
[59] *See Blum v. Stenson.* 465 U.S. 886, 895 (1984); *Powell v. C.I.R..* 891 F.2d 1167, 1173 (5th Cir. 1990); *United States ex rel. Cook-Reska v. Cmty. Health Sys.*, No. H-09-1565, 2015 U.S. Dist. LEXIS 57933, at *26 (S.D. Tex. May 4, 2015).
[60] *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).
[61] *See Condon v. Hunting Energy Servs., L.P.*, No. H-04-3411, 2006 U.S. Dist. LEXIS 76847, 2006 WL 2882857, at *2 (S.D. Tex. Oct. 4, 2006).

Similarly, the fee applicant bears the burden of showing that the hours claimed were reasonably expended.[62] Compensable hours, reasonably spent, are determined from the attorney's contemporaneous time or billing records or other documentation.[63] Attorney fees may be awarded for time spent litigating the fee claim.[64]

Once the lodestar has been determined, the Court then considers the second step: whether the lodestar figure should be adjusted upward or downward depending on the circumstances.[65] In making this determination, the Court should consider the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*[66] In *Johnson*, the court listed the following factors to be considered when setting a reasonable fee: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[67] Once determined, the lodestar may be adjusted upward or downward if the *Johnson* factors, not included in the reasonable fee analysis, warrant the adjustment.[68] However, there is a strong presumption that the lodestar is a reasonable

---

[62] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir. 1996).
[63] *Hensley*, 461 U.S. at 434; *La. Power & Light*, 50 F.3d at 324.
[64] *Johnson v. Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979).
[65] *Migis*, 135 F.3d at 1047.
[66] 488 F.2d 714, 717-19 (5th Cir. 1974); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (applying the *Johnson* factors).
[67] *Johnson*, 488 F.2d at 717–19.
[68] *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.1993).

fee.[69] Ultimately, "[t]he determination of a reasonable attorney's fee is left to the sound discretion of the trial judge."[70]

Here, in support of the $9,066.45 requested—$8,812.00 in attorney fees and $254.45 in costs—Plaintiff provides affidavits from Plaintiff's counsel, Benjamin R. Guerra and Jonathon E. Kramer.[71] In his affidavit, Counsel Guerra requests his work be compensated at his "lodestar rate" of $200 per hour, which he "support[s] as being fair and equitable and commensurate with [his] skills and experience in the district."[72] He further provides that he has been practicing law since 2006 and is in good standing with the Texas Bar.[73] The Court takes judicial notice of the 2015 Texas Bar "Hourly Fact Sheet."[74] Based on Guerra's sworn representations and a review of hourly rates for attorneys in South Texas,[75] the Court finds Counsel Guerra's hourly fee of $200 reasonable.

Counsel Kramer provides that his hourly rate for collections and collections-related litigation is $350 per hour, which he attests is commensurate with or below the rates of attorneys working in collection and collection-litigation in his locality Des Moines, Iowa.[76] He further provides that he has practiced law since 2002 and is a licensed attorney in the state of Iowa.[77] However, in determining legal fees, the relevant community is the one in which the Court sits.[78] While Counsel Kramer's rates diverge from the average local rates in South Texas recorded by the

---

[69] *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).
[70] *Davis*, 908 F.3d at 978 (internal quotation omitted).
[71] Dkt. Nos. 19-3 & 19-4.
[72] Dkt. No. 19-3 at 2, ¶ 7.
[73] *Id.* at 1–2, ¶ 4–7.
[74] https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (hereafter "*Fact Sheet*").
[75] *See* State Bar of Texas 2015 Hourly Rate Fact Sheet, 12 (2016) https://www.texasbar.com/AM/Template.cfm?Section+Demographic_and_Economic_Trends&Template=/CM/contentDisplay.cfm&ContentID=34182 (most recent Texas Bar publication of hourly rates of attorneys in Texas).
[76] Dkt. No. 19-4 at 2, ¶ 3.
[77] *Id.* at 1–2, ¶ 2 & 5.
[78] *See Green, supra* note 60.

Texas Bar Association, these rates are over five-years-old.[79] Furthermore, in 2020, this Court calculated a projected hourly local lodestar rate of $389.40 for an attorney with sixteen plus years of experience in 2019 by multiplying the 2015 rates by the average annual percentage increase between 2013 to 2015.[80] As Counsel Kramer has practiced law for approximately nineteen years and local attorney rates likely have not decreased since 2019, the Court finds Counsel Kramer's billed rate of $350.00 per hour reasonable.

In their affidavits, Counsel Guerra and Counsel Kramer further provide invoices or charts with detailed records of dates and hours worked on each task completed in this case, as well as a record of related expenses.[81] The records show that Counsel Guerra spent 15.7 hours working on this case and Counsel Kramer spent 14.7 hours working on this case.[82] Multiplying these hours by their respective rates, the Court calculates a total of $8,285 in fees,[83] which matches Counsel Guerra's calculation of the fees incurred through July 1, 2021.[84] The only explanation for the additional $517 requested is that the total $8,812.00 requested reflects "fees incurred for [Counsel Guerra's time to present the motion for default judgment to the Court."[85] However, the Court declined to hold a hearing on the motion so Counsel Guerra did not present the motion to the Court. In light of this and because Counsel has not submitted any other basis for the additional $517, the Court declines to include these additional fees in its determination. Now, having determined the reasonableness of the hourly rate proposed by Plaintiff and the reasonableness of the hours worked, the Court calculates the lodestar by multiplying the number of hours by the rate the Court has

---

[79] *See* State Bar of Texas 2015 Hourly Rate Fact Sheet, 12 (2016) https://www.texasbar.com/AM/Template.cfm?Section+Demographic_and_Economic_Trends&Template=/CM/contentDisplay.cfm&ContentID=34182 (most recent Texas Bar publication of hourly rates of attorneys in Texas).
[80] *Paisano Cap. SA de CV v. Velazquez*, No. 7:19-CV-78, 2020 WL 1890702, at *5 (S.D. Tex. Apr. 16, 2020).
[81] Dkt. Nos. 19-3 & 19-4.
[82] Dkt. Nos. 19-3 at 7–10; 19-4 at 4–6.
[83] *Id.*
[84] Dkt. No. 9-3 at 5, ¶ 15.
[85] *Id.* at 4, ¶ 11.

determined is reasonable: 15.7 hours by $200 per hour plus 14.7 by $350 per hour. Thus, the lodestar is $8285.00. Upon review of the *Johnson* factors, the Court does not find any basis to warrant an upward or downward departure from the lodestar fees in this case.[86] Accordingly, the Court **AWARDS** Plaintiff **$8,285.00** in attorney fees.

Plaintiff also requests the Court "reserve jurisdiction to award post-judgment attorney fees and costs of collection which may be incurred from time to time by [Plaintiff]."[87] However, Plaintiff provides no legal basis for this request and no anticipated amount necessary for collection. The Court declines to address this issue at this time.

### iii. Costs and Expenses

Plaintiff also requests $254.45 for court costs.[88] In support of this request, Plaintiff provides the records of the costs recorded in the invoices and charts attached to the affidavits of Counsel Guerra and Counsel Kramer.[89] Under federal statutory authority, a judge or clerk of any court of the United States may tax as costs clerk fees; fees for transcripts; fees for printing of necessary materials; and costs for photocopies necessarily obtained in the use of the case.[90] A prevailing party need not identify every Xerox copy made for use in the course of legal proceedings, but must make "some demonstration that reproduction costs necessarily result from that litigation."[91] The records provided by the parties demonstrate $656.45 in costs.[92] The costs recorded include Texas Secretary of State search charges, the clerk filing fee, service of process, mailing, copies, pacer, and online research costs.[93] It appears that Plaintiff's requested $254.45 omits the $402 court filing

---

[86] See *Johnson, supra* 67; *Shipes, supra* note 68.
[87] Dkt. No. 19 at 7, ¶ 3.11.
[88] Dkt. No. 19 at 7–8.
[89] Dkt. No. 19-3 at 8 & 10; Dkt. No. 19-4 at 6.
[90] 28 U.S.C.S. § 1920 (LexisNexis, Lexis Advance through PL 116-8, approved 3/8/19) 28 USCS § 1920.
[91] *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991).
[92] Dkt. No. 19-3 at 8 & 10; Dkt. No. 19-4 at 6.
[93] *Id.*

fee.[94] Nonetheless, these records are sufficient to establish that the $254.45 requested in incurred costs and expenses are reasonable. The Court further finds the $402 in court filing fees reasonable as further relief to which Plaintiff is entitled per the terms of the Agreement. Accordingly, the Court **AWARDS** Plaintiff **$656.45** in costs and reasonable expenses.

### IV. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **GRANTS** the United States' motion for default judgment.[95] Accordingly, the Court **AWARDS** Plaintiff **$346,000** in principal due, **$1,730** of accrued interest, and accrued default interest accruing interest at the default rate of 18% per annum (**$170.63** per diem) from and after December 1, 2020 until the date of judgment, currently calculated at **$42,828.13**.[96] The Court further **AWARDS** post-judgment interest accruing at the applicable statutory post-judgment interest rate from the date of judgment until paid in accordance with 28 U.S.C. § 1961. The Court also **AWARDS** Plaintiff **$8285.00** in attorney fees and **$656.45** for costs and expenses assessed jointly and severally against Defendants Strong, Structural Steel, and Braden & Treyton Management. The Court declines to award post-judgment attorney fees at this time. A final judgment pursuant to Rule 54 will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 9th day of August 2021.

_____
Micaela Alvarez
United States District Judge

---

[94] *See* Dkt. No. 19-3 at 8.
[95] Dkt. No. 19.
[96] Calculated by multiplying the $170.63 per diem interest by the 251 days that have passed since the default interest began to accrue on December 1, 2020. *See* Dkt. No. 1 at 4, ¶¶ 24; 29; Dkt. No. 19 at 8; Dkt. No. 19-2 at 3.